UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

GLENLYN A. ZIMMER,

        Plaintiff,

   v.

TIM NAWABI, an individual; MATT DURANI, an individual; PRIME FUNDING SOLUTION, an unknown entity; FARIDOON LODIN, an individual; GOLDEN STATE FINANCING CORPORATION, a California corporation; SANDRA BONNER, an individual; FIRST NLC FINANCIAL SERVICES, L.L.C., a California limited liability company; and WILSHIRE CREDIT CORPORATION, a Nevada corporation,

        Defendants.

NO. CIV. 07-16 WBS KJM

<u>MEMORANDUM AND ORDER RE:
MOTION FOR SUMMARY
JUDGMENT</u>

----oo0oo----

        Plaintiff Glenlyn A. Zimmer initiated this action after her refinance resulted in terms that were less advantageous than she was orally promised.  Plaintiff now moves for summary

1

judgment with respect to three of her state law claims against her broker, defendant Golden State Financing Corporation ("Golden State").

I.   Factual & Procedural Background

In November 2005, a Golden State employee contacted plaintiff and discussed the possibility of plaintiff refinancing her home in Stockton.  (Pl.'s Stmt. of Undisputed Facts ## 7-11.)  Plaintiff, who was seventy-nine years old at the time, pursued the option and applied for a loan on January 18, 2006.  (Id. at ## 11-12; Zimmer Decl. Ex. D (loan application indicating that plaintiff's date of birth is June 24, 1926).)  Plaintiff was approved for a loan and Nawabi personally met with her on January 30, 2006 to execute the loan documents.  (Pl.'s Stmt. of Undisputed Facts ## 13, 16.)  At that meeting, Nawabi informed plaintiff that her refinance would result in a single loan with a monthly payment of $2,400.00 for the first month and $1,500.00 for each month thereafter and receipt of $29,000.00 in cash at the close of escrow.[1]  (Zimmer Decl. at ¶¶ 14-15.)  At the close of that meeting, Nawabi instructed plaintiff to sign the loan documents without reading them, which plaintiff did.  (Id. at ¶ 16.)

Later that day, plaintiff discovered that not only were the terms and benefits of her refinance different from those Nawabi described, but what she believed would be one loan was actually two.  (Id. at ¶¶ 17-18.)  The following day, plaintiff

---

[1] Nawabi also informed plaintiff that $2,970.00 of her personal debt would be paid off from escrow.  (Zimmer Decl. ¶ 14.)  This term is not at issue because that amount of personal debt was paid off at the close of escrow.  (Id. at ¶ 25.)

2

contacted Nawabi to rescind the loans; however, Nawabi informed plaintiff that the terms he described "superseded" the terms in the written documents and persuaded plaintiff not to rescind. (Id. at ¶¶ 19-21.)  Lodin brokered both loans, which closed on February 24, 2006.  (Pl.'s Stmt. of Undisputed Facts ## 22-23.)

Contrary to Nawabi's representations, plaintiff's refinance resulted in a monthly payment of $3,316.26 ($3,542.93 with insurance and taxes) per month, with a rate increase in August 2007 and receipt of only $4,326.87[2] in cash at the close of escrow.  (Zimmer Decl. ¶¶ 18, 27.)  As a result of her refinance, plaintiff also had to pay a $18,782,50 prepayment penalty to her previous lender.  (Id. at ¶ 26, Ex. E.)  These loan terms were less advantageous to plaintiff than the mortgage she had prior to the refinance.  (Id. Ex. G (Pl.'s Req. For Admis. & Golden State's Resp. # 17).)

After plaintiff hired counsel, Nawabi contacted plaintiff and offered to obtain a third loan that would reduce her monthly payments.  (Id. at ¶¶ 32-35.)  When plaintiff met with Nawabi about the potential loan, Nawabi, Matt Durani, another Golden State employee, and Lodin, via telephone, offered plaintiff $3,500.00 as a "courtesy check" to "help [plaintiff] with [her] loan payments."  (Id. at ¶¶ 38-40.)  Nawabi, Durani, and Lodin asked plaintiff to sign a receipt for the check.  (Id. at ¶ 41.)  After plaintiff signed what she believed was a receipt

---

[2] While the loan documents indicate that the "Cash TO Borrower" would be $6,191.33, (Zimmer Decl. Ex. E at 1:303), plaintiff claims she received $4,326.87.  (Id. at ¶ 27.) Plaintiff does not address whether she should have received $6,191.33 under the written agreement.

3

for the check, Nawabi, Durani, and Lodin attached her signature to a release of liability.[3] (Id. at ¶¶ 42-43.) Golden State never provided a new loan for plaintiff, and she ultimately moved out of her home in June 2007 due to an impending foreclosure. (Id. at ¶¶ 46, 50-51.)

On November 7, 2006, plaintiff filed a complaint in state court alleging state law claims and a violation of 12 U.S.C. § 2607. Defendants subsequently removed the action to this court. After it filed a Chapter 11 bankruptcy, all claims against First NLC Financial Services, L.L.C. ("First NLC") were automatically stayed on January 22, 2008 pursuant to 11 U.S.C. § 362(a).

On December 5, 2007, plaintiff moved for summary judgment against Golden State, Nawabi, and Lodin with respect to her state law claims for breach of contract, breach of fiduciary duty, and financial elder abuse. Via a counter-motion and pursuant to Federal Rule of Civil Procedure 56(f), defendants requested the court to continue plaintiff's motion to permit defendants to obtain an affidavit from Nawabi. On February 14, 2008, the court granted defendants' Rule 56(f) request and the matter was continued to May 12, 2008. Zimmer, 2008 WL 435341, at *3. Despite the additional time, defendants failed to dispute

---

[3] Golden State does not dispute that Nawabi, Durani, and Lodin informed plaintiff that the form she was signing was a receipt for the check and does not contend that the document effected a valid settlement and waiver of plaintiff's claims.

4

plaintiff's statement of undisputed facts[4] or file any affidavits, evidence, or pleadings in opposition to plaintiff's motion for summary judgment.[5]

At the close of the business day on May 9, 2008, plaintiff informed the court that Lodin had filed a Chapter 7 bankruptcy on April 16, 2008. As is the common practice among bankruptcy attorneys, Lodin's counsel could not extend the courtesy of informing the court that it had filed bankruptcy. Subsequently, one court day before the scheduled hearing on this motion, Nawabi also filed a Chapter 7 bankruptcy. Thus, this

---

[4] Prior to plaintiff filing her motion for summary judgment, Golden State had denied some of plaintiff's factual assertions in its response to plaintiff's request for admission. (See Zimmer Decl. Ex. G.) Relying exclusively on the court's review of Golden State's denials in its response to plaintiff's request for admission is not sufficient to dispute plaintiff's statement of undisputed facts or establish that a genuine issue of material fact precludes summary judgment. See Fed. R. Civ. P. 56(e)(2) ("[A]n opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial."); E. Dist. of Cal. Local R. 56-260(b) ("Any party opposing a motion for summary judgment . . . shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial.").

[5] To the court's surprise, two attorneys appeared for Golden State, Lodin, and Nawabi at the scheduled hearing despite their decision not to file a single document during the three months preceding the hearing on plaintiff's motion. See E. Dist. of Cal. Local R. 78-230(c) ("No party will be entitled to be heard in opposition to a motion at oral argument if that party has not timely filed opposition to the motion."). With striking inconsistency, counsel explained that (1) they did not respond to plaintiff's motion because their creditor status with respect to their clients' bankruptcies limited their communications with their clients; and (2) they did not inform the court of their clients' intent to file bankruptcy because, as they are not bankruptcy counsel, they were unaware of their clients' intent to file bankruptcy.

5

action is automatically stayed as to Lodin and Nawabi.  11 U.S.C. § 362(a).[6]

It is possible that Golden State has joined its co-defendants in bankruptcy, with its counsel following the wasteful custom of keeping the district court and opposing counsel in the dark.[7]  But, because it is not feasible for this court to check the records of the ninety-four federal judicial districts to determine if Golden State did in fact file bankruptcy,[8] the court

---

[6]  "In the absence of special circumstances, stays pursuant to section 362(a) are limited to debtors and do not include non-bankrupt co-defendants." Ingersoll-Rand Fin. Corp. v. Miller Mining Co., 817 F.2d 1424, 1427 (9th Cir. 1987); see also Cohen v. Stratosphere Corp., 115 F.3d 695, 697 (9th Cir. 1997) ("The automatic stay does not preclude us from deciding this appeal with regard to all parties other than [the bankrupt party], and we now proceed to do so.").
   On February 1, 2008, this court requested that the non-bankrupt parties submit briefs regarding the effect § 362 has on future proceedings in this action.  In the only brief submitted, plaintiff argued that § 362 does not prevent plaintiff from proceeding against the non-bankrupt defendants.  None of the defendants submitted briefs or argued that special circumstances warranted staying the action as to the non-bankrupt defendants.  Therefore, the court found that the automatic stay applied only to claims against First NLC. Zimmer v. Nawabi, No. 07-16, 2008 WL 435341, at *1 n.1 (E.D. Cal. Feb. 14, 2008).  Similarly, none of the parties contend that the automatic stays resulting from Lodin and Nawabi's bankruptcies should apply to the remaining non-bankrupt defendants.  Those automatic stays, therefore, apply only to claims against Lodin and Nawabi.
   While plaintiff chose to proceed with her claims against the non-bankrupt defendants even though Lodin and Nawabi are Golden State employees and it appears First NLC is Golden State's employer, (Zimmer Decl. Ex. D at 4), this Order is not the law of the case with regard to First NLC, Lodin, or Nawabi's potential liability and does not have a preclusive effect against them.

[7]  At oral argument, Golden State's counsel stated that they did not believe Golden State had filed bankruptcy, but could not be certain.

[8]  The court has checked the dockets for the bankruptcy courts in just two districts: this district and the Northern District of California.  While inquiries for "Golden State

6

1 must proceed with plaintiff's motion at the risk of wasting
2 judicial resources if it is later revealed that Golden State has
3 filed bankruptcy.[9]

4 II. <u>Discussion</u>

5       Summary judgment is proper "if the pleadings, the
6 discovery and disclosure materials on file, and any affidavits
7 show that there is no genuine issue as to any material fact and
8 that the movant is entitled to judgment as a matter of law."
9 Fed. R. Civ. P. 56(c).  A material fact is one that could affect
10 the outcome of the suit, and a genuine issue is one that could

---

Financing Corporation" did not result in any matches, inquires for "Golden State" resulted in 112 matches, twelve of which appear to provide brokerage services.  Such results illustrate the court's inability to ensure that an unannounced filing has not automatically stayed a pending case.

[9]     At oral argument, Golden State's counsel informed the court that Golden State had recently dissolved.  Golden State's dissolution, however, does not affect the court's ability to determine the merits of plaintiff's motion for summary judgment and enter an order against Golden State.  <u>See</u> Cal. Corp. Code § 2010(a)-(b) ("A corporation which is dissolved nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it and enabling it to collect and discharge obligations . . . .  No action or proceeding to which a corporation is a party abates by the dissolution of the corporation . . . ."); <u>id.</u> § 2011(a)(1) ("Causes of action against a dissolved corporation, whether arising before or after the dissolution of the corporation, may be enforced against any of the following: (A) Against the dissolved corporation, to the extent of its undistributed assets, including, without limitation, any insurance assets held by the corporation that may be available to satisfy claims.  (B) If any of the assets of the dissolved corporation have been distributed to shareholders, against shareholders of the dissolved corporation to the extent of their pro rata share of the claim or to the extent of the corporate assets distributed to them upon dissolution of the corporation, whichever is less."); <u>Catalina Invs., Inc. v. Jones</u>, 98 Cal. App. 4th 1, 7-8 (2002) (discussing section 2010 and its application by the California Supreme Court in <u>Penasquitos, Inc. v. Superior Court</u>, 53 Cal. 3d 1180, 1183 (1991)).

permit a reasonable jury to enter a verdict in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the movant can demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial. Id.

Once the moving party meets its initial burden, the non-moving party "may not rely merely on allegations or denials in its own pleading," but must go beyond the pleadings and "by affidavits or as otherwise provided in [Rule 56,] set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); Celotex Corp., 477 U.S. at 324; Valandingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989). "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2); see also Henry v. Gill Indus. Inc., 983 F.2d 943, (9th Cir. 1993) (in the absence of a response by the non-moving party, entering summary judgment is not appropriate if "the movant's papers are insufficient to support that motion or on their face reveal a genuine issue of material fact"). In its inquiry, the court must view any inferences drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

    A.    <u>Breach of Contract Claim</u>

8

Plaintiff contends Golden State breached its contract with plaintiff because plaintiff's refinance resulted in a higher monthly payment and receipt of less cash at the close of escrow than plaintiff was promised. Instead of arguing that Golden State breached the written loan agreement, plaintiff contends that it breached the oral promises Nawabi made to plaintiff.

"The parol evidence rule, codified in Code of Civil Procedure section 1856, subdivision (a), prohibits a party from resorting to extrinsic evidence of a prior or contemporaneous oral agreement to contradict a plain and unambiguous term of a fully integrated agreement."[10] Charnay v. Cobert, 145 Cal. App. 4th 170, 186 (2006). While section 1856 does not exclude the use of extrinsic evidence to establish fraud, Cal. Civ. Proc. Code § 1856(g), this exception does not extend to "promissory fraud claims premised on prior or contemporaneous statements at variance with the terms of a written integrated agreement." Casa Herrera, Inc. v. Beydoun, 32 Cal. 4th 336, 346 (2004) (citations omitted); see also Pac. State Bank v. Greene, 110 Cal. App. 4th 375, 390 (2003) ("'"Promissory fraud" is a promise made without any intention of performing it.'") (citations omitted). The fraud exception to the parol evidence rule does not encompass oral promises that contradict written agreements because "'[s]uch a principle would nullify the rule: for conceding that such an agreement is proved, or any other contradicting the written

---

[10] While plaintiff attempts to fashion her breach of contract claim as breach of an oral agreement, plaintiff does not contend that the loan agreement did not constitute a fully integrated agreement or proffer any other argument against application of the parol evidence rule.

9

instrument, the party seeking to enforce the written agreement according to its terms, would always be guilty of fraud.'" Bank of Am. Nat'l Trust & Savs. Ass'n v. Pendergrass, 4 Cal. 2d 258, 263 (1935).

In Pacific State Bank, however, a California Court of Appeal held that a party may submit extrinsic evidence to prove "a misrepresentation of <u>fact</u> over the content of a physical document at the time of execution." 110 Cal. App. 4th at 390 (emphasis in original). According to Pacific State Bank, the parol evidence rule does not bar extrinsic evidence of a "misrepresentation of <u>fact</u> over the content of the physical document at the time of signing" so long as the "defrauded party [] show[s] a reasonable reliance on the misrepresentation that excuses the failure to familiarize himself or herself with the contents of the document." Id. at 379, 393. While the California Supreme Court has recognized Pacific State Bank's holding, it has yet to decide whether "such an exception exists." Casa Herrera, Inc., 32 Cal. 4th at 346.

Assuming the exception established in Pacific State Bank governs the admissibility of extrinsic evidence under California's parol evidence rule, plaintiff nonetheless fails to prove that Nawabi's statements constituted misrepresentations of fact with respect to the content of loan documents when she signed them. In her affidavit, plaintiff states:

> Nawabi told me that I had qualified for my requested loan, . . . that I would receive approximately $29,000.00 in cash at the conclusion of the transaction instead of the $10,000.00 I had been told earlier. Nawabi also told me that my total monthly mortgage payments would start out at approximately $2,400.00 per month for the first month, then go down to $1,500.00 per month for the

10

> remainder of the loan.  Nawabi gave me several forms to sign and instructed me to sign them without reading them because they were "standard mortgage papers" and I "had seen them all before." . . . I signed the forms without reading them and left.

(Zimmer Decl. ¶¶ 14-16.)  These statements do not establish that Nawabi falsely represented the content of the loan documents as opposed to promising terms that contradicted those in the documents.

After discovering that the terms in the written loan documents contradicted the terms Nawabi promised, plaintiff contacted Nawabi the following day to rescind her loans.[11]  In response to her concerns about the differing terms, plaintiff states that "Nawabi told me that the increase in monthly payments would only be temporary and that the monthly payments would go down to $1,500.00 after one month.  Nawabi told me that the loan terms he had explained to me earlier <u>superseded whatever the loan documents appeared to say</u>."  (Zimmer Decl. ¶ 20 (emphasis added).)  This statement, and the fact that plaintiff's First Amended Complaint asserts a claim for "breach of <u>oral</u> contract," suggest that Nawabi's statements constituted promissory fraud, not misrepresentations regarding the factual content of the loan documents.

Therefore, even if <u>Pacific State Bank</u> controls, plaintiff fails to establish that Nawabi's oral statements constituted misrepresentations about the factual content of the loan documents when she signed them.  Accordingly, because the

---

[11] Plaintiff had "the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information."  15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a).

11

parol evidence rule precludes the court from considering Nawabi's oral promises regarding the terms of plaintiff's refinance--and plaintiff does not allege Golden State breached the written loan agreement--the court must deny plaintiff's motion for summary judgment with respect to her breach of contract claim against Golden State.

### B. Breach of Fiduciary Duty Claim

Under California law, a mortgage loan broker acts in a fiduciary capacity that "not only imposes upon him the duty of acting in the highest good faith toward his principal but precludes the agent from obtaining any advantage over the principal in any transaction had by virtue of his agency." Wyatt v. Union Mortgage Co., 24 Cal. 3d 773, 782 (1979). This duty obligates brokers to "make a full and accurate disclosure of the terms of a loan to borrowers and to act always in the utmost good faith toward their principals." Id. A mortgage broker breaches this duty if he or she provides "materially misleading and incomplete information" regarding the terms of a loan even if the correct terms are in the loan documents and the borrower does not read the written documents. Id. at 782-83; see also id. at 783 ("[C]ases have [] held that the existence of a confidential relationship may justify reliance upon oral misrepresentation of the terms of a contract.").

When brokering a loan for a borrower of "modest means and limited experience in financial affairs," a mortgage broker also has "duties of oral disclosure and counseling," which require the broker to "disclose orally the true rate of interest, the penalty for late payments or [other material terms of the

12

loan] . . . ." Id. at 783-84; see also id. at 784 ("[Such borrowers] may be assumed to have justifiably relied on the [broker's] expertise."). But see Stetler v. Greenpoint Mortgage Funding Inc., No. 07-0123, 2008 WL 192405, at *6 (E.D. Cal. Jan. 23, 2008) (declining to extend Wyatt to impose fiduciary duties on a broker who acts as an independent contractor for a borrower, but still concluding that such a broker has duties that "arise from a prohibition against making affirmative misrepresentations rather than from a duty to explain the ins and outs of each loan product").

As plaintiff's broker, Golden State owed the aforementioned fiduciary duties to plaintiff and can be held vicariously liable if its employees' conduct breached those duties. See Cal. Real Estate Loans, Inc. v. Wallace, 18 Cal. App. 4th 1575, 1581 (1993) ("The broker is liable as a matter of law for all damages caused to third persons by the tortious acts of the salesperson committed within the course and scope of employment."); Warshauer v. Bauer Constr. Co., 179 Cal. App. 2d 44, 49 (1960) ("The courts have consistently held that the principal is responsible to third parties for the misconduct of an agent committed within the scope of his authority even though the principal is completely innocent and has received no benefit from the transaction."); Alhino v. Starr, 112 Cal. App. 3d 158, 174 (1980) ("The employer's liability under the doctrine of respondeat superior extends to malicious acts and other intentional torts of an employee committed within the scope of his employment."). Therefore, because Nawabi acted on behalf of Golden State in the transaction with plaintiff and Nawabi,

13

1 Durani, and Lodin also acted on its behalf when they obtained
2 plaintiff's signature on the release, (Zimmer Decl. Ex. G (Pl.'s
3 Req. For Admis. & Golden State's Resp. ## 3, 15)), Golden State
4 is vicariously liable for Nawabi, Durani, and Lodin's conduct if
5 it breached the fiduciary duties Golden State owed plaintiff.

6       The undisputed evidence unequivocally establishes that
7 Nawabi's conduct of informing plaintiff that the terms of her
8 single loan would be different than the actual terms of her two
9 loans breached the fiduciary duties a broker owes a borrower.  As
10 plaintiff was a seventy-nine-year-old with only fourteen years of
11 formal education and was of "modest means and limited experience
12 in financial affairs," her broker also had the duty to orally
13 disclose the terms of her refinance to her.  Wyatt, 24 Cal. 3d at
14 783-84.  Nawabi's conduct of failing to orally disclose the
15 actual loan terms and instructing plaintiff to sign the loan
16 documents without reading them breached that duty.

17       Nawabi, Durani, and Lodin's conduct with respect to the
18 "settlement of claims" they purported to obtain from plaintiff
19 also breached a broker's fiduciary duties.  The undisputed
20 evidence shows that Nawabi, Durani, and Lodin falsely told
21 plaintiff that Golden State was offering her a "courtesy check"
22 for $3,500.00 and that the document she was signing was merely a
23 receipt for that check.  Misrepresenting the content of a
24 document that is disadvantageous to the borrower breaches the
25 duties a broker owes that borrower.  See id. at 782 (mortgage
26 broker has duty to act with the highest degree of good faith and
27 is precluded "from obtaining any advantage over the principal in
28 any transaction had by virtue of his agency").

14

1 Accordingly, the court will grant plaintiff's motion
2 for summary judgment with respect to her breach of fiduciary duty
3 claim against Golden State.

   C.   Financial Elder Abuse Claim

The California Legislature enacted the Elder Abuse Act, Cal. Welf. & Inst. Code §§ 15600-15675, "to protect elders by providing enhanced remedies which encourage private, civil enforcement of laws against elder abuse and neglect." Negrete v. Fid. & Guar. Life Ins. Co., 444 F. Supp. 2d 998, 1001 (C.D. Cal. 2006). A person is considered an "elder" under the Act if the person is sixty-five years of age or older. Cal. Welf. & Inst. Code § 15610.27.[12]

Financial elder abuse is defined in subsection 15610.30(a), which provides:

> "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following: (1) Takes, secretes, appropriates, or retains real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both. (2) Assists in taking, secreting, appropriating, or retaining real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both.

Cal. Welf. & Inst. Code § 15610.30(a)(1)-(2). A person or entity is "deemed to have taken, secreted, appropriated, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates or retains possession of property in bad faith." Id. § 15610.30(b). A person or entity "is deemed to have acted in bad faith if the person or entity

---

[12] It is undisputed that plaintiff was seventy-nine at the time she refinanced her home through Golden State. (See Zimmer Decl. Ex. D (loan application indicating that plaintiff's date of birth is June 24, 1926).)

15

knew or should have known that the elder . . . had the right to have the property transferred or made readily available to the elder . . . or to his or her representative." Id. § 15610.30(b)(1).  Lastly, a person should have known of such a right "if, on the basis of the information received by the person or entity or the person or entity's authorized third party, or both, it is obvious to a reasonable person that the elder . . . has [such] a right."  Id. § 15610.30(b)(2).

To utilize the Elder Abuse Act's enhanced remedies, a plaintiff must prove "by clear and convincing evidence that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of the abuse."  Id. § 15657.5(b);[13] see also id. § 15657.5(a) (preponderance of the evidence standard governs a plaintiff's ability to recover "all other remedies otherwise provided by law" and reasonable attorney's fees and costs associated with the financial elder abuse claim).

With respect to plaintiff's refinance, Golden State received $10,700.00 in fees, which it wrongfully obtained as a result of Nawabi's false statements about the terms of plaintiff's refinance, which it knew were less favorable to plaintiff than her previous mortgage.  See Toscano v. Ameriquest Mortgage Co., No. 07-0957, 2007 WL 3125023, at *6 (E.D. Cal. Oct. 24, 2007) (holding that an elder abuse claim based on defendant's misrepresentations about the terms of plaintiff's loans is

---

[13]   Plaintiff has not sought summary judgment with respect to the requisite finding in subsection 15657.5(b)'s provision for enhanced remedies.  Therefore, the court will not address whether there is clear and convincing evidence that Golden State is "guilty of recklessness, oppression, fraud, or malice in the commission of the abuse."  Id. § 15657.5(b).

16

"'financial in nature'") (citation omitted).  Therefore, Golden State is liable under subsection 15610.30(a)(1).  Cal. Welf. & Inst. Code § 15610.30(a)(1)-(2).

Accordingly, the court will grant plaintiff's motion for summary judgment with respect to her elder abuse claim against Golden State.

While plaintiff has submitted sufficient evidence for the court to grant her motion for summary judgment with respect to Golden State's liability for her breach of fiduciary duty and financial elder abuse claims, she has not submitted sufficient evidence with respect to the total damages she is seeking for those claims.  This Order is therefore limited to Golden State's liability and the court will award damages after considering additional evidence.  See Kelly v. Am. Standard, Inc., 640 F.2d 974, 984 (9th Cir. 1981) ("The nature and amount of recovery are questions of fact . . . .") (footnote omitted), overruled on other grounds by Trans World Airlines, Inc. v. Thurston, 469 U.S. 111 (1985).

IT IS THEREFORE ORDERED that (1) plaintiff's motion for summary judgment with respect to her breach of contract claim against Golden State be, and the same hereby is, DENIED; (2) plaintiff's motion for summary judgment with respect to liability for her breach of fiduciary duty claim against Golden State be, and the same hereby is, GRANTED; and (3) plaintiff's motion for summary judgment with respect to liability for her financial elder abuse claim against Golden State be, and the same hereby is, GRANTED.

An evidentiary hearing to determine damages on

plaintiff's breach of fiduciary duty and financial elder abuse claims is set for June 16, 2008 at 2:00 p.m.  The parties shall be prepared to submit any evidence with respect to damages at that hearing.

DATED:  May 13, 2008

*/s/ William B. Shubb*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE